```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION


CHEMGUARD INC.                §
                              §
VS.                           §      ACTION NO. 4:08-CV-057-Y
                              §
DYNAX CORPORATION             §
```

OPINION AND ORDER GRANTING MOTION TO DISMISS OR TRANSFER

Pending before the Court is the Amended Motion to Dismiss for Lack of Jurisdiction and, Alternatively, for Improper Venue and Transfer (doc. 52) filed by defendant Dynax Corporation ("Dynax"). After consideration of the motion, related briefs, and applicable law, the Court concludes that it lacks jurisdiction over Dynax. Rather than dismissing this cause, however, the Court concludes that it should be transferred to the United States District Court for the Southern District of New York.

I. Facts

Plaintiff Chemguard Inc. ("Chemguard") and Dynax are competitors in the business of developing and marketing fire-fighting foam agents and related technologies. Dynax has developed a patented line of chemical products known as fluorosurfactants for use as key ingredients in aqueous-film-forming foam agents, which are used to fight fuel and solvent fires. On November 9, 2007, Dynax sent a letter to Chemguard in Texas asserting that Chemguard was infringing Dynax's United States patent number 5,750,043 ("the '043 patent").

On January 25, 2008, Chemguard filed this action against Dynax, seeking a declaratory judgment that its products do not infringe

Dynax's patent and requesting an injunction prohibiting future threats by Dynax. Dynax moved to dismiss Chemguard's action, asserting, inter alia, that this Court lacks personal jurisdiction over Dynax and requesting that the Court dismiss or, alternatively, transfer this action to the Southern District of New York.[1] The Court granted Chemguard's request for jurisdictional discovery, and the motion is now fully briefed.

## II.  Applicable Law

The requirement that a court possess personal jurisdiction over the parties appearing before it arises out of an individual's right to liberty secured by the Due Process Clause. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Because the requirement of personal jurisdiction derives from "an individual right, it can, like other such rights, be waived." *Id.* at 703.

If not waived, "[t]he plaintiff bears the burden of establishing a district court's jurisdiction over a nonresident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the court rules without an evidentiary hearing, however, the plaintiff need only make a prima-facie showing that the exercise of jurisdiction is proper. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). "Moreover, on a motion to dismiss for lack of jurisdiction,

---

[1] Dynax also contends that Chemguard's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief; alternatively, Dynax requests transfer on the grounds that New York is a more convenient forum under 28 U.S.C. § 1404(a). In light of the Court's conclusion that it lacks personal jurisdiction, it will not address either of these arguments.

uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

A "federal court sitting in diversity may assert [personal] jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston*, 523 F.3d at 609.

In determining whether federal due process permits the exercise of jurisdiction over an out-of-state infringer or--as is the case here--patent owner, this Court applies the law as interpreted by the United States Court of Appeals for the Federal Circuit ("the Federal Circuit"). *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. 1995). Under that analysis, a plaintiff demonstrates the existence of jurisdiction by proving: (1) that the non-resident has purposeful minimum contacts with the forum state, sufficient to constitute "fair warning that a particular activity may subject [him] to litigation within the forum;" and (2) that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (quoting *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945)). The minimum-contacts prong of the analysis can be further broken down into the following components:

> [W]e have held in the context of patent infringement litigation that an assertion of *general* jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state," and that such activity will "confer [] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive [Inc. v. Strong Indus. Inc.]*, 326 F.3d [1194,] 1200 [(Fed. Cir. 2003)]. With respect to *specific* jurisdiction,
>
>> [t]his court employs a three-prong test, in which we determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. . . .
>
> *Breckenridge [Pharm., Inc. v. Metabolite Labs., Inc.]*, 444 F.3d [1356,] 1363 [(Fed. Cir. 2006)]. . . . We have also applied the stream of commerce theory, although we have not resolved the split in authority reflected in the competing plurality opinions in *Asahi [Metal Indus. Co., v. Superior Court,* 480 U.S. 102 (1987)]. *See Beverly Hills Fan*, 21 F.3d at 1566.

*Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1331-32 (Fed. Cir. 2008). The split in *Asahi* concerned "whether or not 'the placement of a product into the stream of commerce, *without more*,' may serve as 'an act of the defendant purposefully directed toward the forum State,'" and thus sufficient to confer personal jurisdiction. *Avocent*, 552. F.3d at 1331 (quoting *Asahi*, 480 U.S. at 112).[2]

---

[2]The Federal Circuit further noted that

> because this theory of jurisdiction originates in the product liability context, which lends itself to the *specific* jurisdiction framework, it remains unclear whether contacts based solely on the 'stream of commerce' may suffice to establish *general* jurisdiction. The Fifth Circuit, for example, has held that such contacts will not support a finding of general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

Under the stream-of-commerce theory, a plaintiff may establish personal jurisdiction over a nonresident by demonstrating that the nonresident placed its injury-causing product into the stream of commerce with the knowledge and intent that it reach the forum state. "[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### III. Analysis

1. Waiver

Chemguard first urges that Dynax waived any objection to personal jurisdiction in this case by invoking this Court's jurisdiction in another matter. While the parties conducted jurisdictional discovery in this case, Dynax removed to this Court a case filed by Chemguard in state court. The petition Chemguard filed in state court alleged that Dynax tortiously interfered with Chemguard's agreements with Mitchell Hubert, a former employee of Ansul, Inc. ("Ansul"), and

---

*Id.* at 1331; *see also Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08CV26, 2009 WL 105467, at *4 (E.D. Tex. March 26, 2009) (noting that "[t]he distinction between specific and general jurisdiction is of little value in 'stream-of-commerce' cases because the situation is one where 'the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of the defendant's products'") (quoting *Beverly Hills Fan*, 21 F.3d at 1566).

Williams Fire and Hazard Control, Inc.  Chemguard asserts that Dynax's removal of this suit from state court and its failure to object to the Court's exercise of personal jurisdiction therein constitutes a waiver of its personal-jurisdiction objection in this case.

The Court disagrees.  This Court's exercise of specific personal jurisdiction in the tortious-interference case does not constitute an across-the-board waiver of jurisdictional objections by Dynax in any case brought in this forum:

> Is specific personal jurisdiction a claim-specific inquiry? We conclude that it is.  A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.
> This result flows logically from the distinction between general and specific jurisdiction and is confirmed by the decisions of our sister circuits.  If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.
> Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause.  Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)(footnotes omitted); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d. Cir. 2001) ("[A] determination [regarding specific jurisdiction] is claim specific because a conclusion that the [d]istrict [c]ourt has personal jurisdiction over one of the defendants as to a particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same

defendant as to [the plaintiff's] other claims."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1351 n. 30 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.").

Chemguard has not proven that Dynax has the type of continuous and systematic contacts with the state of Texas that would give rise to the exercise of general personal jurisdiction, and the facts giving rise to the claims in this suit do not appear to be even tangentially related to the facts alleged in the tortious-interference suit. Even the case cited by Chemguard in support of its argument recognizes that the waiver of jurisdiction occurring because of the filing of a second suit applied only to "a complaint arising out of the same transaction as [the second suit]." *Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991). As a result, the Court discerns no basis for concluding that Dynax has waived its objection to this Court's exercise of personal jurisdiction in this action.[3]

---

[3] Chemguard also erroneously contends that Dynax's three motions for extension of time to answer or otherwise respond to Chemguard's complaint constitute a waiver of Dynax's objection to this Court's exercise of personal jurisdiction. *See United States v. 51 Pieces of Real Property, Roswell, N.M.*, 17 F.3d 1306, 1314 (10th Cir. 1994) (concluding that a party's motion for extension of time to file a claim in a forfeiture action did not constitute a "defensive move" that waived his personal-jurisdiction defense); *Alliantgroup, L.P. v. Feingold*, No. H-09-0479, 2009 WL 1109093, at *6 (S.D. Tex. April 24, 2009) (a defendant's post-removal "motion for extension of time to answer is not a responsive pleading and his failure to object to jurisdiction in that motion did not waive his objection to a lack of personal jurisdiction"); *S&D Trading*

2.  Personal Jurisdiction

Thus, the Court must determine whether it can properly exercise personal jurisdiction over Dynax. Chemguard's complaint alleges that the exercise of jurisdiction over Dynax is proper because "Dynax has solicited business in the state of Texas, transacted business within the state of Texas, and attempted to derive financial benefit from residents of the state of Texas." (Compl. 2, ¶ 5.) Chemguard further contends that Dynax "has corresponded into Texas attempting to interfere with Chemguard's lawful business activities." (*Id.*) In that regard, Chemguard alleges that "[o]n November 15, 2007, Dynax submitted a letter to Chemguard's counsel asserting one of the Ciba product lines purchased by Chemguard, specifically a foam stabilizer known as FP-5100, infringes upon [the '043 patent] allegedly owned by Dynax." (Compl. 3, ¶ 12.)

As previously mentioned, Chemguard has not demonstrated that Dynax's contacts with the state of Texas justify the exercise of general personal jurisdiction. Rather, relying on the Federal Circuit's decision in *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424 (Fed. Cir. 1996), Chemguard contends that personal jurisdiction can be asserted over Dynax under a stream-of-commerce theory.

In *Viam*, the Federal Circuit noted that the stream-of-commerce theory is an "analytical tool useful in cases in which the defendant's

---

*Acad., LLC v. AAFIS, Inc.*, No. G-06-739, 2007 WL 3220167, at *5 (S.D. Tex. October 26, 2007) ("A motion to extend the time to answer is neither a Rule 12 motion nor an answer, and it does not therefore cause the moving party to waive objections to personal jurisdiction under the rubric of Rule 12.").

contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products." *Id.* at 427. The court then employed the theory to conclude, in a declaratory-judgment action brought by an alleged infringer against an out-of-state patent owner, that it had jurisdiction over the patent owner due to the extent of his distribution network and other activities within the forum:

> In this case, [the patent owner's] marketing agreement and practices with [its North American distributor and exclusive licensee] establish a regular distribution channel through which [the patent owner] purposefully directed its activities. [The distributor] has the exclusive right to advertise, market and distribute products in the United States. In advertising and selling the invention, [the distributor] uses [the patent owner's] catalog which it has obtained from [the patent owner]. Furthermore, [the distributor's] Director of North American Sales reported to [the patent owner] on a regular basis as to the sales of [the owner's] products in the United States, and [the distributor] sold approximately $2.4 million worth of [the owner's] products in the United States in 1992. These facts clearly establish a regular chain of distribution from [the owner] through [the distributor] to various markets in the United States.
> Furthermore, [the owner] did not simply place its product into the stream of commerce. [He] knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California. . . . [The owner] provided [the distributor] numerous sales aids which [the owner] knew would be used in California for selling [his] products there.

*Id.* at 428-29. Finally, the court noted that the owner and distributor had jointly "initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court in the Central District of California." *Id.* at 430.

Chemguard has not demonstrated, however, that Dynax has a similar distribution network within the state of Texas or has previously sought to enforce the '043 patent within the state. Chemguard submitted evidence that some of Dynax's products were sold to others who then incorporated them into their own products and sold those products in Texas.[4] Even assuming sale of the 'incorporated' product in the forum is sufficient, Chemguard has not shown that Dynax engaged in the kind of forum-specific distribution network and product assistance that was evident in *Viam.* No licensing and/or distributorship agreement between Dynax and Ansul has been presented, nor is there any evidence that Dynax controlled or assisted Ansul's activities within this forum. *See id.* at 428; *see also Adell Corp v. Elco Textron, Inc.*, 51 F. Supp. 2d 752, 755 (N.D. Tex. 1999) (emphasizing "importance of the established distribution channel" in stream-of-commerce analysis). And the only evidence Chemguard proffers to show that Dynax has attempted to enforce its patent in this forum is the cease-and-desist letter Dynax sent to Chemguard in November 2007. In the patent context, such letters are insufficient, by themselves, to create personal jurisdiction. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed.

---

[4] Chemguard presented excerpts of the deposition of Dr. Eduard Kleiner, Dynax's corporate representative, who testified that he "is aware that Dynax products are incorporated into products sold by others into Texas." (Chemguard's App. 31, depo. at 12, lines 7-9.) Specifically, Kleiner testified that "we are selling to Ansul foam stabilizer, and the foam stabilizers end up in all of Ansul's alcohol-type agents." (*Id.* lines 20-23.) Kleiner also testified that Ansul is "[t]he largest alcohol-type AFFF producer in the U.S," (*id.* 34, depo. at 50, lines 12-13), and "is Dynax's largest customer . . . in the United States," (*id.* 35, depo. 61, lines 5-7).

Cir. 2003)("we have repeatedly held that the sending of infringement letters would satisfy the minimum contacts requirement of due process except for policy considerations unique to the patent context").

Furthermore, Dynax argues, and the Court agrees, that the subsequent decision by the Federal Circuit in *Avocent Huntsville Corporation v. Aten International Co.*, 552 F.3d 1324 (Fed. Cir. 2008), confirms that this Court cannot exercise personal jurisdiction over Dynax. In *Avocent*, the Federal Circuit was again faced with a declaratory-judgment suit brought against a patent owner by an alleged infringer seeking to establish noninfringement and invalidity of the patent at issue. *Id.* at 1326-27. The court concluded that, due to the differing nature of the claims at issue, the relevant jurisdictional contacts also differed depending upon whether the patent owner or alleged infringer filed suit:

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. *See* 35 U.S.C. § 271(a). Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. *See Red Wing Shoe* [*Co., Inc. v. Hockerson-Halberstadt, Inc.*], 148 F.3d [1355,] 1360 [(Fed. 1998)]. In such litigation, the claim both "arises out of" and "relates to" the defendant's alleged manufacturing, using, or selling of the claimed invention. But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the "wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit." *Id.* Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges." *Id.*

> Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee "purposefully directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory judgment claim "arises out of or relates to those activities." *Breckenridge*, 444 F.3d at 1363.

*Avocent*, 552 F.3d at 1332-33. The court upheld the district court's dismissal for lack of personal jurisdiction because neither Avocent's complaint nor its declarations "identify activities [of the defendant] purposefully directed at the forum and related in any material way to the enforcement or defense of the validity of the patents in issue." *Id. at* 1338. Similarly, Chemguard has pointed to no enforcement activities in this forum by Dynax, save and except the cease-and-desist letter it sent to Chemguard. As noted previously, however, this letter alone is an insufficient basis upon which to exercise jurisdiction over Dynax due to policy considerations.

Chemguard contends that *Avocent* is in conflict with *Viam*, and thus, under the "prior-panel-decision rule," the latter panel's decision must yield to the former's. *See United States v. Texas Tech. Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) (noting that "[w]here two panel decisions conflict, the prior decision constitutes the binding precedent.") For the reasons previously mentioned, however, this Court does not believe that the panels' decisions are conflicting. Indeed, the panel in *Avocent* specifically noted that *Viam* was distinguishable. *Avocent*, 552 F.3d at 1338-39. In any

event, the Court need not determine the issue because it concludes that Chemguard has failed to demonstrate, prima facie, a case of personal jurisdiction under either panel's interpretation.

## IV. Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Dynax. Rather than dismissing this case, however, the Court concludes that the interests of justice instead militate in favor of transfer. Specifically, the fact that transfer would alleviate Chemguard's need to re-file and re-serve Dynax, coupled with the fact that the parties are already involved in litigation in the New York forum, lead the Court to conclude that a transfer rather than dismissal promotes the interests of justice. *See FAS Techs., Ltd. v. Dainippon Screen Mfg. Co.*, No. Civ. A. 3:98-CV-2842G, 2000 WL 193621, at *2 (N.D. Tex. Feb. 16, 2000) (noting that district court could transfer under 28 U.S.C. § 1406(a) even though lacking personal jurisdiction and concluding that necessity of re-serving the defendant warranted transfer rather than dismissal). Thus, this cause is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

SIGNED February 2, 2010.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE